LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
JOHN K. GRANT (169813)
SHAWN A. WILLIAMS (213113)
MONIQUE C. WINKLER (213031)
AELISH M. BAIG (201279)
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)
johng@lerachlaw.com
shawnw@lerachlaw.com
mwinkler@lerachlaw.com
abaig@lerachlaw.com

[Proposed] Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RALPH D. WILDER, Derivatively on Behalf of SONIC SOLUTIONS,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT J. DORIS, et al.,<br><br>Defendants,<br><br>– and –<br><br>SONIC SOLUTIONS, a California corporation,<br><br>Nominal Defendant. | No. C-07-1500-CW<br><br>NOTICE OF MOTION AND MOTION TO CONSOLIDATE ACTIONS AND TO APPOINT SAMMY K. DOOLITTLE AND RALPH D. WILDER LEAD PLAINTIFFS AND APPOINT LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE: August 2, 2007<br>TIME: 2:00 p.m.<br>COURTROOM: The Honorable CLAUDIA WILKEN<br><br>[Previously filed in *Wilder v. Doris, et al.*, 4:07-cv-01500-CW] |

[Caption continued on following page.]

| | |
|---|---|
| ANDREW WALTER, Derivatively on Behalf of Nominal Defendant SONIC SOLUTIONS,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT J. DORIS, et al.,<br><br>Defendants,<br><br>– and –<br><br>SONIC SOLUTIONS,<br><br>Nominal Defendant. | Case No. C-07-02344-CW |
| JAMES FORSETH, Derivatively on Behalf of Nominal Defendant SONIC SOLUTIONS,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT J. DORIS, et al.,<br><br>Defendants,<br><br>– and –<br><br>SONIC SOLUTIONS,<br><br>Nominal Defendant. | Case No. C-07-03178-CW |
| SAMMY K. DOOLITTLE, Derivatively on Behalf of SONIC SOLUTIONS,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT J. DORIS, et al.,<br><br>Defendants,<br><br>– and –<br><br>SONIC SOLUTIONS,<br><br>Nominal Defendant. | Case No. C-07-03361-BZ |

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on August 2, 2007 at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Claudia Wilken, United States District Judge, 1300 Clay Street, Courtroom 2, Fourth Floor, Oakland, California, plaintiffs Sammy K. Doolittle ("Doolittle") and Ralph D. Wilder ("Wilder") will move this Court for an order: (i) consolidating all pending and subsequently filed derivative stock option backdating actions on behalf of nominal defendant Sonic Solutions ("Sonic" or the "Company"); and (ii) appointing Doolittle and Wilder lead plaintiffs and Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") lead counsel. The motion is supported by the Declaration of John K. Grant in Support of Motion to Consolidate Actions and to Appoint Sammy K. Doolittle and Ralph D. Wilder Lead Plaintiffs and Appoint Lerach Coughlin Stoia Geller Rudman & Robbins LLP Lead Counsel ("Grant Decl."), filed concurrently herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

On February 1, 2007, Sonic announced that it had initiated an internal review of the Company's historical stock option practices. ¶50.[1] Option backdating is a practice by which a stock option is publicly reported as having been granted on one date, but is actually backdated weeks or months to a date where the stock was trading at a lower price. Such backdating allows company executives and stock option grantees to realize immediate unearned and undisclosed financial gains at the expense of the company's shareholders. Lynn Turner, the Securities and Exchange Commission's ("SEC") former Chief Accountant, described backdating as follows: "'It's like allowing people to place bets on a horse race after the horses have crossed the finish line'. . . ." Grant Decl., Exhibit 1 at 1. Arthur Levitt, former Chairman of the SEC, described backdating as

[1] Unless otherwise noted, all paragraph ("¶") references are to the Verified Shareholder Derivative Complaint for Violation of the Federal Securities Laws and State Law Claims for Breach of Fiduciary Duty, Abuse of Control, Constructive Fraud, Corporate Waste, Unjust Enrichment, Gross Mismanagement and Action for Accounting, filed March 15, 2007, by Wilder, derivatively on behalf of Sonic (the "Complaint"), *Wilder v. Doris, et al.*, No. 4:07-cv-01500-CW (the "*Wilder* Action").

stealing: "***It is ripping off shareholders in an unconscionable way***'" and '"***represents the ultimate in greed***'. . . ." Grant Decl., Ex. 2 at 1.[2] Option backdating violates both the federal securities laws and state law corporate fiduciary laws. Former SEC Chairman Harvey Pitt has opined:

> Many discussions of backdating options start with the observation that backdating is not, per se, illegal. ***That is wrong***. Options backdating frequently involves falsification of records used to gain access to corporate assets. That conduct violates the Foreign Corrupt Practices Act and its internal controls requirements. If corporate directors were complicit in these efforts, state law fiduciary obligations are violated. ***Backdating is not only illegal and unethical, it points to a lack of integrity in a company's internal controls***.

Grant Decl., Ex. 3 at 1.

Defendants' backdating scheme not only surreptitiously and illegally lined their own pockets and caused the Company to issue false financial statements, but it undermined the key purpose of option-based executive compensation, which is to provide an incentive to improve the Company's performance and increase the Company's stock price. By backdating options such that they carry a strike price lower than the trading price of the stock at the time of option issuance, executives profit immediately upon the award of the option without doing anything to improve the Company's business or financial condition – a situation which President Bush recently declared "bad for America":

> [O]vercompensating or trying to backdate things is bad for America, and there ought to be consequences when people don't tell the truth and are not transparent.

Grant Decl., Ex. 4 at 6.

In this case, Sonic has already suffered substantial damages resulting from defendants' self-dealing and bad faith. For example, the Company has been forced to conduct a costly internal investigation to uncover the details of the improperly backdated stock option grants. Sonic will also be subject to the costs of restating its financial results possibly dating back to 2001. In fact, Sonic has announced that it believes the Company's failure to properly date its options will result in significant charges to its reported financial results. ¶50.

---

[2] All emphasis is added and citations and quotations are omitted unless otherwise noted.

## II. SUMMARY OF THE FACTS AND PROCEDURAL HISTORY

### A. The *Doolittle* and *Wilder* Actions

The *Doolittle* and *Wilder* shareholder derivative actions were brought on behalf of Sonic against its directors and certain senior executives for breach of fiduciary duty and violations of federal securities law and state corporation law. Specifically, beginning as early as fiscal 2001, defendants caused Sonic to grant hundreds of thousands of stock options, many of which were backdated to provide the Sonic insiders with lower strike prices. ¶¶40-47. The Complaint alleges that defendants' backdating scheme benefited, among others, the Company's Co-Founder and Board Chairman, Robert J. Doris. ¶15.

The Complaint further alleges the illegal backdating caused the Company to materially understate publicly reported compensation expenses in violation of Generally Accepted Accounting Principles ("GAAP"), thereby artificially inflating Sonic's publicly reported financial results. ¶¶57-63. The publication of Sonic's false financial statements also caused the Company's stock to trade at artificially inflated prices. ¶51.

While the price of the Company's stock was artificially inflated and its financials materially misstated, Sonic's officers and directors engaged in insider trading, selling more than ***$43 million*** worth of Sonic stock in violation of the federal securities and state fiduciary laws, including Cal. Corp. Code §§25402 and 25502.5, which allow for the recovery of treble damages. ¶¶14-21, 49. Defendants Doris and Mary C. Sauer each sold more than one million shares for proceeds of over $17 million each. *Id.*

The charts below, reproduced from ¶44 of the Complaint, illustrate the suspect timing of the option grants – immediately prior to sharp increases in Sonic's stock price:

SonicSolutions

April 17, 2001 - October 11, 2001

Dollars Per Share
2
1.9
1.8
1.7
1.6
1.5
1.4
1.3
1.2
1.1
1
7/12/01
04/17/2001
05/01/2001
05/15/2001
05/30/2001
06/13/2001
06/27/2001
07/12/2001
07/26/2001
08/09/2001
08/23/2001
09/07/2001
09/27/2001
10/11/2001

SonicSolutions
August 31, 1001 - March 1, 2002
Dollars Per Share
9
8
7
6
5
4
3
2
1
0
12/3/01
08/31/2001
09/21/2001
10/05/2001
10/19/2001
11/02/2001
11/16/2001
12/03/2001
12/17/2001
01/02/2002
01/16/2002
01/31/2002
02/14/2002
03/01/2002

NOT OF MTN & MTN TO CONSOL ACTIONS & APPT DOOLITTLE & WILDER LEAD PLTFS & APPT LERACH COUGHLIN LEAD COUNSEL; MEM OF P&A IN SUPP THEREOF - C-07-1500-CW

- 4 -

SonicSolutions
December 11, 2002 - June 5, 2003
Dollars Per Share
9
8
7
6
5
4
3
3/11/03
12/11/2002
12/26/2002
01/10/2003
01/27/2003
02/10/2003
02/25/2003
03/11/2003
03/25/2003
04/08/2003
04/23/2003
05/07/2003
05/21/2003
06/05/2003
SonicSolutions
March 26, 2004 - June 23, 2004
Dollars Per Share
24
23
22
21
20
19
18
17
5/10/04
03/26/2004
04/05/2004
04/14/2004
04/22/2004
04/30/2004
05/10/2004
05/18/2004
05/26/2004
06/04/2004
06/15/2004
06/23/2004

During the relevant period, defendants caused Sonic's shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial statements, business and prospects. Specifically, defendants caused or allowed Sonic to issue statements that failed to disclose or misstated that: (1) the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (2) because of improperly recorded stock-based compensation expenses, the Company's financial results violated GAAP; and (3) the Company's public disclosures presented an inflated view of Sonic's earnings and earnings per share. ¶51.

The Company's anticipated restatement of its financial statements will most assuredly negatively impact Sonic's previously reported earnings and shareholder equity. Because Doolittle and Wilder have been and are currently holders of Sonic stock, they directed their attorneys, Lerach Coughlin, to file these derivative actions to recover damages and other relief for Sonic, including corporate governance reforms, from defendants as recompense for the severe injuries their misconduct has inflicted upon the Company.

**Procedural Status**

Beginning on March 15, 2007, shareholder derivative actions were filed on behalf of Sonic in this District:

| **Abbreviated Case Name** | **Case Number** | **Date Filed** |
| --- | --- | --- |
| *Wilder v. Doris, et al.* | 4:07-cv-01500-CW | March 15, 2007 |
| *Walter v. Doris, et al.* | 4:07-cv-02344-CW | April 30, 2007 |
| *Forseth v. Doris, et al.* | 3:07-cv-03178-JL | June 15, 2007 |
| *Doolittle v. Doris, et al.* | 3:07-cv-03361-BZ | June 26, 2007 |

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, Doolittle and Wilder seek to consolidate all pending and subsequently filed related shareholder derivative actions involving Sonic in the Northern District of California.

## III. ARGUMENT

### A. Consolidation of the Sonic Shareholder Actions Is Proper Under Rule 42(a)

Pursuant to Fed. R. Civ. P. 42(a), Doolittle and Wilder seek an order consolidating the above-referenced actions, and ordering that any other actions filed in or transferred to this Court which arise out of or relate to the same facts as alleged in the above-referenced actions should be consolidated for all purposes.

Each of the Sonic shareholder actions currently pending in this District (the "Related Actions") seeks to remedy defendants' breaches of their fiduciary duties and alleges that defendants have been unjustly enriched as a result of the Company's stock option granting practices. The Related Actions thus involve common questions of law and fact. The power to consolidate related actions falls within the broad inherent authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Rule 42(a) provides that:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a); *Erikson v. Cornerstone Propane Partners LP*, No. C 03-2522 MHP, 2003 U.S. Dist. LEXIS 18009 (N.D. Cal. Sept. 9, 2003). A court has discretion to consolidate related cases which involve common questions of fact and law under Rule 42(a) "under the policy that considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event." *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970); *see also Schriver v. Impac Mortgage Holdings, Inc.*, No.: SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *6 (C.D. Cal. May 2, 2006).

Courts have indeed recognized that consolidation of similar shareholder actions can be beneficial to the court and the parties by "'expediting pretrial proceedings, avoiding duplication . . . and minimizing expenditure of time and money.'" *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976); *see also Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999) (consolidation pursuant to Rule 42(a) eases the burden on all parties

involved). "[W]hen consolidation is appropriate, the Court has the discretion to order the consolidation of subsequently-filed or transferred cases that allege similar facts as those alleged in the current shareholder derivative suits." *Horn v. Raines*, 227 F.R.D. 1, 2 (D.D.C. 2005) (ordering consolidation of all related derivative actions); *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *6.

Accordingly, Doolittle and Wilder respectfully submit that the Related Actions should be consolidated for all purposes under Rule 42(a).

**B. Doolittle and Wilder Are the Most Adequate Lead Plaintiffs**

The courts have consistently held that the decision of which plaintiff should control a shareholder derivative litigation should be analyzed via objective factors that are most likely to demonstrate which plaintiff will best serve the interests of the shareholder base as a whole. *TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, No. 18336, 2000 Del. Ch. LEXIS 147, at *10 (Oct. 17, 2000). The United States Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), concluded that a plaintiff who leads a shareholder derivative suit occupies a position "of a fiduciary character." *Id.* at 549. The Supreme Court explained, "[t]he interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity." *Id.* As a result, courts typically, after consolidating related derivative actions, select the proposed lead plaintiff who is most capable of diligently and responsibly discharging his fiduciary obligations. Indeed, several courts across the nation have looked to the standards utilized for selecting lead plaintiffs in federal securities class actions to shareholder derivative actions. *Horn*, 227 F.R.D. at 2.

Delaware courts, which are most familiar with shareholder derivative actions, have consistently held that the decision of which plaintiff should control a shareholder derivative litigation should be analyzed via objective factors that are most likely to demonstrate which plaintiff will best serve the interests of the shareholder base as a whole. *TCW*, 2000 Del. Ch. LEXIS 147, at *10. Thus, in determining who should be lead plaintiff in this action, the Court should carefully consider the following objective criteria:

- ***First***, the "Court should consider the quality of the pleading[s]." *Id.* at *10.

- ***Second***, the "Court should give weight to the shareholder plaintiff that has the greatest economic stake in the outcome of the lawsuit." *Id.*[3]

- ***Third***, the "Court should accord some weight in the analysis to whether a particular litigant has prosecuted its lawsuit with greater energy, enthusiasm or vigor than have other similarly situated litigants." *Id.* at **10-11.

Applying these factors here counsels in favor of appointing Doolittle and Wilder, holders of Sonic stock, as lead plaintiffs. Doolittle and Wilder seek comprehensive relief, including, *inter alia*: (1) disgorgement of profits; (2) directors and officers' options plans voided; (3) unexercised options cancelled; (4) an accounting; and (5) adoption of new corporate governance policies. A review of the Complaint's comprehensive allegations makes clear that it is of high "quality." *See id.* at *10. Additionally, Wilder was the first plaintiff to seek lead plaintiff status by filing an agreed stipulation on April 26, 2007, prior even to the filing of the *Walter* complaint. Doolittle and Wilder have demonstrated their intentions to aggressively represent the interests of Sonic in this case with "energy, enthusiasm" and "vigor." *Id.* at *11. Accordingly, Doolittle and Wilder should be appointed lead plaintiffs in the Sonic shareholder derivative litigation.

**C. Lerach Coughlin Is Uniquely Qualified to Serve as Lead Counsel**

Doolittle and Wilder have selected Lerach Coughlin to serve as their counsel and lead counsel on behalf of Sonic shareholders because of their unique qualifications and resources to pursue recovery on behalf of Sonic shareholders. Lerach Coughlin is a national law firm with over 160 lawyers, including more than 25 lawyers in its San Francisco, California office. Lerach Coughlin's substantial presence in San Francisco will reduce litigation costs overall, improve communication with the Court, and generally streamline this litigation. Moreover, Lerach Coughlin and its shareholder derivative litigation department led by William S. Lerach and Darren J. Robbins, possess extensive experience litigating complex shareholder actions.[4] Over the past several years

---

[3] "This factor, of course, is similar to the federal system that now uses a model whereby the class member with the largest economic interest in the action is given responsibility to control the litigation. . . . [I]t seems appropriate, at least, to give recognition to large shareholders . . . who are willing to litigate vigorously on behalf of an entire class of shareholders . . . ." *Id.*

[4] *See* Grant Decl., Ex. 5 (Lerach Coughlin's firm resume) and the firm's website *available at* http://www.lerachlaw.com.

NOT OF MTN & MTN TO CONSOL ACTIONS & APPT DOOLITTLE & WILDER LEAD PLTFS & APPT LERACH COUGHLIN LEAD COUNSEL; MEM OF P&A IN SUPP THEREOF - C-07-1500-CW - 9 -

they have recovered hundreds of millions of dollars for corporations and shareholders and obtained ground-breaking corporate governance reforms.

### D. Lerach Coughlin Brings Unparalleled Experience and Leadership to Complex Shareholder Litigations

Lerach Coughlin has earned a reputation for aggressively and skillfully pursuing recoveries and corporate reform on behalf of shareholders. Many federal courts have noted the depth of Lerach Coughlin's resources and the firm's ability to benefit plaintiffs in similar representative shareholder actions. *See, e.g.*, *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, MDL-1446, 2006 U.S. Dist. LEXIS 43146, at *77 (S.D. Tex. June 5, 2006) (Lerach Coughlin is "comprised of probably the most prominent securities class action attorneys in the country"); *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *36 ("Lerach Coughlin has extensive experience litigating [shareholder] actions . . . [and that] [t]here is no real dispute among the movants regarding Lerach Coughlin's qualifications to prosecute this action"); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio. 2005) (finding that Lerach Coughlin "will represent deftly the class's interests").[5]

When faced with multiple lead plaintiff motions in the largest, most complex shareholder action in United States history, U.S. District Judge Melinda Harmon of the Southern District of Texas appointed Lerach Coughlin as sole lead counsel to coordinate the efforts of other counsel and direct the prosecution of the *Enron* case, concluding:

> [T]he Court has found that the submissions of [Lerach Coughlin] stand out in the breadth and depth of its research and insight. . . .
>
> [T]he Court has reviewed in careful detail the submissions of [Lerach Coughlin] regarding its competency to serve as Lead Counsel and finds it fully capable of representing Lead Plaintiff and the class. . . .

---

[5] *See also In re Versata, Inc. Sec. Litig.*, No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270, at *25 (N.D. Cal. Aug. 17, 2001) (Illston, J.) (Lerach Coughlin chosen based on its strong national reputation in handling large and complex securities class actions); *Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, Civ. No. 00-3605 (DRD), 2000 U.S. Dist. LEXIS 16712, at *16 (D.N.J. Nov. 16, 2000) (Debevoise, J.) ("This firm has experience in prosecuting complex securities actions, has been appointed lead counsel in numerous consolidated litigations, and is qualified to represent the Local 144 Group in the instant action.").

*In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002).  In June 2006, after more than four years of hard-fought litigation resulting in partial settlements of more than $7 billion, Judge Harmon's high regard for Lerach Coughlin attorneys has not changed: Lerach Coughlin "is comprised of probably the most prominent securities class action attorneys in the country.  It is not surprising that Defendants have not argued that counsel is not adequate." *Enron*, 2006 U.S. Dist. LEXIS 43146, at *77.

In addition to its experience and resources to pursue and litigate shareholder actions, Lerach Coughlin has recovered substantial money damages and achieved corporate governance reforms in shareholder representative actions.  For example, Lerach Coughlin was responsible for recovering $55 million in *In re Storage Tech. Corp. Sec. Litig.*, No. 92-B-750 (D. Colo.).  The firm also prosecuted a shareholder derivative action on behalf of Sprint Corporation which resulted in governance changes that were heralded by Robert Monks, the founder of LENS Governance Advisors:  "There has never been an occasion in American corporate history when a company has agreed to so many groundbreaking corporate governance reforms in one fell swoop." *See Sprint Settlement Includes Groundbreaking Changes for Independent Directors*, 19 Andrews Corp. Officers & Directors Liab. Litig. Rep. 7 (Apr. 7, 2003) (Grant Decl., Ex. 6).

Similarly, Lerach Coughlin achieved significant corporate governance reforms in the *Ashland* shareholder derivative litigation, *Central Laborers' Pension Fund v. Chellgren, et al.*, No. 02-CI-02174 (Ky. Cir. Ct.), including the establishment of enhanced director independence standards, the imposition of both minimum director stock ownership requirements and a minimum stock option holding period, and the appointment of a shareholder nominated director.  *See generally* Bruce Schreiner, *Ashland Agrees to Corporate Governance Changes to Settle Shareholder Lawsuit*, Associated Press, Jan. 28, 2005 (noting the extensive corporate governance reforms achieved in the shareholder action placed Ashland Inc. "at the forefront of corporate governance") (Grant Decl., Ex. 7).

Likewise, Lerach Coughlin successfully prosecuted *Barry v. Cotsakos, et al.* ("*E*Trade Group, Inc. Derivative Action*"), No. CIV419804 (Cal. Super. Ct. 2001), a shareholder derivative action which resulted in groundbreaking corporate governance changes at E*Trade, including an

$800,000 reduction in the CEO's base salary and the return to E*Trade of $6 million in cash and 2 million shares of E*Trade stock previously granted to the CEO as well as the appointment of a new outside director to serve as the Chair of E*Trade's executive compensation committee. Grant Decl., Ex. 8.

Lerach Coughlin was also recently able to restructure a board of directors and obtain pervasive corporate governance changes as part of a resolution of the *Hanover* shareholder litigation that was hailed as "a model for corporate reform in the post-Enron era." Edward Iwata, *Shareholders Win in Hanover Settlement*, USA Today, May 14, 2003 (Grant Decl., Ex. 9). Corporate governance groups lauded the settlement, which granted shareholders with more than 1% of company stock the right to nominate two independent directors to the company's slate of candidates, among other reforms, as "groundbreaking" and stated that the settlement "goes to the heart of corporate power." *Id*. In sum, there is simply no question that Lerach Coughlin attorneys have an unparalleled record of success in the achievement of significant, meaningful results in shareholder derivative actions.

**IV. CONCLUSION**

Accordingly, Doolittle and Wilder's Motion to Consolidate Actions and to Appoint Sammy K. Doolittle and Ralph D. Wilder Lead Plaintiffs and Appoint Lerach Coughlin Stoia Geller Rudman & Robbins LLP Lead Counsel should be granted.

DATED: July 3, 2007

Respectfully submitted,

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
JOHN K. GRANT
SHAWN A. WILLIAMS
MONIQUE C. WINKLER
AELISH M. BAIG

/s/
JOHN K. GRANT

100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

NOT OF MTN & MTN TO CONSOL ACTIONS & APPT DOOLITTLE & WILDER LEAD PLTFS & APPT LERACH COUGHLIN LEAD COUNSEL; MEM OF P&A IN SUPP THEREOF - C-07-1500-CW - 12 -

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
TRAVIS E. DOWNS III
KATHLEEN A. HERKENHOFF
BENNY C. GOODMAN III
MARY LYNNE CALKINS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
THOMAS G. WILHELM
9601 Wilshire Blvd., Suite 510
Los Angeles, CA 90210
Telephone: 310/859-3100
310/278-2148 (fax)

[Proposed] Lead Counsel for Plaintiffs

T:\CasesSF\Sonic Solutions\BRF00043299.doc

NOT OF MTN & MTN TO CONSOL ACTIONS & APPT DOOLITTLE & WILDER LEAD PLTFS & APPT LERACH COUGHLIN LEAD COUNSEL; MEM OF P&A IN SUPP THEREOF - C-07-1500-CW    - 13 -

CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 3, 2007.

/s/

JOHN K. GRANT

LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

E-mail:johng@lerachlaw.com

# Mailing Information for a Case 4:07-cv-03178-CW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lawrence Timothy Fisher**
  ltfisher@bramsonplutzik.com,moldenburg@bramsonplutzik.com
- **Eric L. Zagar**
  ezagar@sbtklaw.com,kpopovich@sbtklaw.com,der_filings@sbtklaw.com,rwinchester@sbtklaw.co

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**J. Daniel Albert**
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA 19087

**Nichole Browning**
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA 19087

**Alan R Plutzik**
Schiffrin Barroway Topaz & Kessler, LLP
2125 Oak Grove Road
Suite 120
Walnut Creek, CA 94598

# Mailing Information for a Case 4:07-cv-02344-CW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lawrence Timothy Fisher**
  ltfisher@bramsonplutzik.com,moldenburg@bramsonplutzik.com
- **Monica Patel**
  monica.patel@hellerehrman.com,elsa.pulido@hellerehrman.com
- **Alan Roth Plutzik**
  aplutzik@bramsonplutzik.com
- **Eric L. Zagar**
  ezagar@sbtklaw.com,kpopovich@sbtklaw.com,der_filings@sbtklaw.com,rwinchester@sbtklaw.co

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**J. Daniel Albert**
280 King of Prussia Road
Radnor, PA 19087

**Nichole Browning**
280 King of Prussia Road
Radnor, PA 19087

**James Forseth**
,